UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ARCTURUS THERAPEUTICS, INC.,

Plaintiff,

v.

ABBVIE INC., CAPSTAN THERAPEUTICS, INC., PRIYA KARMALI, STEVEN P. TANIS, S.P. TANIS PHARMACHEM CONSULTING LLC, DOES 1–100,

Defendants.

CAPSTAN THERAPEUTICS, INC.,

Counterclaim-Plaintiff,

v.

ARCTURUS THERAPEUTICS, INC., DAIKI MATSUDA, RAJESH MUKTHAVARAM,

Counterclaim-Defendants.

Case No.: 3:25-cv-02494-RSH-AHG

**CASE MANAGEMENT ORDER NO. 1 (RESOLVING DISPUTES REGARDING PROTECTIVE ORDER AND PRIVILEGE LOGS)**

**[ECF Nos. 40–43]**

Before the Court are the parties' disputes concerning certain terms of their proposed Protective Order and the form of the privilege logs to be exchanged in discovery. ECF Nos. 40–43. The parties submitted briefing following the Court's August 18, 2026, Case Management Conference and the Court's subsequent Order Following Case Management Conference. ECF No. 39. The Court has considered the parties' briefing, supporting declarations and exhibits, and the applicable law. For the reasons discussed below, the Court resolves the disputes as follows.

## I. BACKGROUND

This action arises from competing allegations concerning the development and alleged misappropriation of confidential biotechnology information relating to lipid nanoparticle technology. In its First Amended Complaint, Plaintiff Arcturus Therapeutics, Inc. ("Arcturus") alleges that Defendant Priya Karmali, a former Arcturus executive, and Defendant Steven P. Tanis, a longtime Arcturus consultant, used Arcturus's confidential information in connection with work performed for Defendant Capstan Therapeutics, Inc. ("Capstan"). Arcturus further alleges that Capstan incorporated that information into patent applications and technology later acquired by Defendant AbbVie Inc. ("AbbVie"). ECF No. 28 ¶¶ 1–5. Capstan, in turn, asserts counterclaims alleging that former Capstan employees Daiki Matsuda and Rajesh Mukthavaram misappropriated Capstan's confidential and trade secret information for Arcturus. ECF No. 31 at 39 ¶¶ 1–2. Defendants AbbVie, Capstan, Karmali, Tanis, and S.P. Tanis PharmaChem Consulting LLC, d/b/a SPTanis PharmaChem Consulting LLC, are referred to collectively as the "Capstan Parties."

Arcturus asserts claims for breach of contract, tortious interference with contract, trade secret misappropriation under federal and California law, and correction of inventorship. *See generally* ECF No. 28. Capstan asserts counterclaims for trade secret misappropriation and related claims against Arcturus, Matsuda, and Mukthavaram. ECF No. 31 at 60–67. The parties' competing trade secret claims concern highly sensitive biotechnology information. Arcturus alleges that its trade secrets include biocompatible,

ionizable cationic lipids used in lipid nanoparticles for delivery of drug payloads, including mRNA, some of which remain unpublished. ECF No. 28 ¶¶ 112–16. Capstan likewise alleges the misappropriation of confidential and trade secret information concerning its *in vivo* CAR T-cell therapy technology and related research and development. ECF No. 31 ¶¶ 64–67.

The confidentiality of information exchanged in discovery is therefore a significant issue to all parties in this litigation. The parties negotiated a proposed Protective Order providing two levels of protection: "CONFIDENTIAL" and the more restrictive "CONFIDENTIAL – FOR COUNSEL ONLY." ECF No. 40-4 ¶ 8. Under the parties' proposed language, the latter designation applies to information considered among a producing party's most sensitive materials, including trade secret and highly confidential research, development, financial, or commercial information. *Id.* ¶ 8(b).

On August 18, 2026, the Court held a Case Management Conference at which it addressed several disputes concerning discovery and the proposed Protective Order. The Court advised the parties that, if they could not resolve the dispute concerning employee access to protected material, they could submit briefing. ECF No. 39 at 1. The Court also tentatively concluded that the parties should use categorical rather than document-by-document privilege logs, without prejudice to a later request for additional information concerning particular categories. *Id.* The Court thereafter permitted the parties to file opening briefs by September 1, 2026, and supplemental briefs by September 8, 2026, as to any issues that remained in dispute after a final attempt to meet and confer in light of the Court's tentative direction. *Id.* at 2.

The parties timely submitted their positions. ECF Nos. 40–43. The disputes now before the Court concern whether Arcturus may designate its Chief Legal Officer, Lance Kurata, as "House Counsel" under the Protective Order, which would allow him access to information designated as "CONFIDENTIAL" and "CONFIDENTIAL – FOR COUNSEL ONLY"; whether Dr. Payne may receive access to information designated as

"CONFIDENTIAL"; and the form of the parties' privilege logs.[1]

## II. DISCUSSION

### A. Whether Lance Kurata May Be Designated as House Counsel

#### 1. Legal Standard

Federal Rule of Civil Procedure 26(c)(1)(G) authorizes a court, for good cause, to protect "a trade secret or other confidential research, development, or commercial information" by limiting or prescribing the manner of its disclosure. In determining whether a particular attorney may receive access to highly confidential information under a protective order, the Court must balance the producing party's interest in protecting its confidential information from inadvertent disclosure against the receiving party's need for access to that information in order to litigate the case effectively. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470–71 (9th Cir. 1992).

That inquiry does not turn on whether the attorney is employed in-house or by an outside law firm. Rather, the Court must examine the particular attorney's actual responsibilities, activities, and relationship with the client to determine whether access presents an unacceptable risk of inadvertent disclosure. *Id.* at 1470; *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468–69 (Fed. Cir. 1984). Thus, an attorney's status as in-house counsel, standing alone, does not justify denial of access. *U.S. Steel*, 730 F.2d at 1469.

One important consideration is whether the attorney participates in "competitive decisionmaking." *Brown Bag*, 960 F.2d at 1470. That concept refers to an attorney's advice or participation in business decisions made in light of information about competitors, such as decisions concerning pricing, product design, or other competitively significant matters. *Id.* (quoting *U.S. Steel*, 730 F.2d at 1468 n. 3). Courts therefore examine what the attorney

---

[1] The Court does not reach the issue of the use of artificial intelligence tools in the protective order because the parties have not fully met and conferred to see if they can reach agreement.

actually does for the company, rather than rely on the attorney's job title or assumptions about the responsibilities of senior in-house counsel. *See MedImpact Healthcare Systems, Inc. v. IQVIA Inc.*, No. 19-cv-1865-GPC (DEB), 2021 WL 389820, at *2–4 (S.D. Cal. Feb. 4, 2021); *Sonix Technology Co. Ltd. v. Yoshida*, No. 12cv380-CAB (DHB), 2014 WL 11878353, at *2–5 (S.D. Cal. June 30, 2014).

Competitive decisionmaking is an important factor, but it is not dispositive. *Sonix*, 2014 WL 11878353, at *2. The Court also considers the risk of inadvertent disclosure, the hardship resulting from restricting access, the timing of the requested restriction, and the scope of the proposed limitation. *Id.* The Court may also consider safeguards that reduce the risk of inadvertent disclosure. *See Brown Bag*, 960 F.2d at 1470–72. In assessing hardship, the relevant question is whether restricting access would impair the party's ability to litigate the case, rather than merely make management of the litigation less convenient. *See Presidio Components, Inc. v. American Technical Ceramics Corp.*, 546 F. Supp. 2d 951, 953–54 (S.D. Cal. 2008).

Courts in this District consider each proposed designee separately. *See MedImpact*, 2021 WL 389820, at *2. Where an in-house attorney's competitive responsibilities create a meaningful risk of inadvertent disclosure, that risk weighs against access. *See, e.g., id.* at *3 (denying access to in-house counsel whose responsibilities included contracting, licensing, and deciding whether a competitor would receive access to company data); *Presidio*, 546 F. Supp. 2d at 953–54. By contrast, where the record does not show that the attorney participates in competitive decisionmaking and adequate safeguards are in place, courts have permitted access to confidential information. *See MedImpact*, 2021 WL 389820, at *4.

**2. Analysis**

Arcturus seeks to designate Mr. Kurata as House Counsel, which would permit him to review both "CONFIDENTIAL" and "CONFIDENTIAL – FOR COUNSEL ONLY" material. ECF No. 41 at 2–3; ECF No. 40-4 ¶¶ 5, 15–16. The Capstan Parties oppose that designation, arguing that Mr. Kurata participates in competitive decisionmaking and that

giving him access creates an unacceptable risk of inadvertent disclosure. ECF No. 40 at 4–5.

Mr. Kurata has served as Arcturus's Chief Legal Officer since August 2020. ECF No. 40-7 at 3. He is an attorney in good standing with the State Bar of California and currently oversees the company's legal department. ECF No. 40-2 at 3. Arcturus's in-house legal department consists of three attorneys: Mr. Kurata; Geri Rochino, who oversees the contracts department; and Simone Ward, who is responsible for patent prosecution. Mr. Kurata's role is not focused on making strategic business or commercial decisions for Arcturus. Although he negotiates collaboration and licensing agreements and attends strategic meetings among Arcturus executives, he does not identify or select potential collaboration partners, decide which programs or products Arcturus will pursue, direct scientific research, handle patent prosecution, or assess competitors' products. When he participates in discussions touching on company strategy, his role is to advise on legal risks and provide legal guidance rather than to make competitive business decisions. ECF No. 41-1 ¶¶ 1–4.

The Capstan Parties rely on the parties' negotiations over the Protective Order to support their argument that Mr. Kurata should not be designated as House Counsel. Although Arcturus initially proposed Mr. Kurata as House Counsel, it later advised the Capstan Parties that it had "removed Mr. Kurata from the Protective Order" and added a procedure for designating House Counsel if the need later arose. ECF No. 40-2 at 1–2. In that same email, Arcturus asked for more information about AbbVie's proposed in-house counsel so it could assess whether they were involved in competitive decisionmaking. *Id.* The Capstan Parties argue that this shows Arcturus had already agreed that Mr. Kurata should not have access to protected material because of his role. ECF No. 40 at 5. Arcturus disagrees and argues that Mr. Kurata's role in competitive decisionmaking is, at most, de minimis. ECF No. 43 at 3.

The Court is not persuaded that Mr. Kurata's responsibilities preclude him from being designated as House Counsel under the Protective Order. His work on collaboration

and licensing agreements and his attendance at strategic executive meetings weigh somewhat in favor of the Capstan Parties' position, particularly because licensing activity may involve competitive decisionmaking. *See Sonix*, 2014 WL 11878353, at *4. But the inquiry turns on the attorney's actual role. Here, the record indicates that Mr. Kurata does not select Arcturus's collaboration partners, decide which products or programs the company will pursue, direct its scientific research, prosecute its patents, or evaluate competitors' products. ECF No. 41-1 ¶¶ 3–4. Nor is there evidence that he makes the kinds of business decisions identified in *U.S. Steel*, such as pricing or product-design decisions based on information about competitors. The Court finds that Mr. Kurata's participation in collaboration and licensing matters is primarily legal in nature and does not show that he participates in competitive decisionmaking to a degree that warrants denying access.

The cases cited by the Capstan Parties involved more direct participation in competitive business decisions than Mr. Kurata has here. *See, e.g., Brown Bag*, 960 F.2d at 1471 (in-house counsel was company's sole legal adviser and personnel manager); *Presidio*, 546 F. Supp. 2d at 953–54 (attorney was also the head of acquisitions for the defendant's parent company, reviewed financial and marketing analyses, and handled contracts for competitive bids). Mr. Kurata's role is different. Although he negotiates collaboration and licensing agreements, the record does not show that he selects the business partners with whom Arcturus contracts for licensing, directs product or research decisions, sets pricing, evaluates competitors' products, or makes similar competitive business decisions. Courts in this District have recognized that "unrebutted statements made by counsel asserting that he does not participate in competitive decision-making, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decision-making." *Javo Beverage Co. v. California Extraction Ventures, Inc.*, No. 19-cv-1859-CAB (WVG), 2020 WL 2062146, at *2 (S.D. Cal. Apr. 29, 2020); *see also MedImpact*, 2021 WL 389820, at *4. Although the Capstan Parties dispute Mr. Kurata's characterization of his role, they have not offered evidence that undermines Mr. Kurata's sworn description of his current responsibilities.

The Court is also not persuaded that Arcturus conceded this issue during the parties' negotiations. Although Arcturus removed Mr. Kurata from an earlier draft of the Protective Order and added a procedure for designating House Counsel if the need later arose, the email does not say why Mr. Kurata was removed or state that Arcturus agreed he was a competitive decisionmaker. ECF No. 40-2 at 2. The Court therefore does not view the earlier draft as resolving the issue.

The Protective Order also includes safeguards against misuse or inadvertent disclosure. Mr. Kurata will be bound by the Court's order and by the same restrictions that apply to others who receive protected information. House Counsel must sign an Acknowledgment and Agreement to Be Bound, and protected information may be used only for this litigation. ECF No. 40-4 ¶¶ 5, 14. The Acknowledgment also subjects Mr. Kurata to this Court's jurisdiction to enforce the Protective Order. *Id.*, Ex. A. If Mr. Kurata misuses or improperly discloses any confidential information, the Court will have a clear basis to address the violation and Mr. Kurata may also be subject to censure as a licensed California lawyer.

The hardship to Arcturus also weighs in favor of allowing Mr. Kurata access. Arcturus's legal department consists of only three attorneys, and Mr. Kurata states that he is the only one with both the institutional knowledge of the company and familiarity with this dispute needed to review the materials produced in discovery and advise Arcturus about the litigation. ECF No. 41-1 ¶¶ 2, 5. The Capstan Parties argue that Geri Rochino could serve as House Counsel instead. ECF No. 40 at 6. Although Ms. Rochino has substantial transactional experience, she manages the company's day-to-day contracts and does not have the same familiarity with the subject matter of this case. ECF No. 40-6; ECF No. 41 at 6. Based on the record, Ms. Rochino would not provide Arcturus with the same ability to evaluate the case and advise the company as Mr. Kurata.

The Capstan Parties also note that Arcturus identified Mr. Kurata as a potential witness regarding pre-lawsuit communications between Arcturus and Capstan. ECF No. 40 at 4; ECF No. 40-5 at 4. They argue that giving him access to protected information

risks “tainting a central fact witness.” ECF No. 42 at 7 (citing *Arconic Inc. v. Novelis Inc.*, 2018 WL 5660180, at *2 (W.D. Pa. Aug. 3, 2018)). The Court is not persuaded that *Arconic* weighs in favor of denying access here. There, the witness was central to the trade secret issues, and the concern was that reviewing the opposing party’s confidential information could affect her testimony about the trade secrets themselves. *Id.* at *2. Here, Arcturus identifies Mr. Kurata only as a witness regarding pre-lawsuit communications between Arcturus and Capstan. ECF No. 40-5 at 4. The record does not show that he is expected to testify about the substance or scope of the Capstan Parties’ protected technical information.

The timing and scope of the request also do not weigh against access. Arcturus raised the issue before the Court set a case management schedule, and the record does not indicate that Mr. Kurata has already received the Capstan Parties’ protected information. Arcturus also seeks to designate only Mr. Kurata as House Counsel. ECF No. 41 at 6.

Considering Mr. Kurata's actual responsibilities, the safeguards in the Protective Order, the hardship to Arcturus if he is denied access, and the timing and scope of the request, the Court finds that the balance weighs in favor of allowing Mr. Kurata to serve as House Counsel. Accordingly, Mr. Kurata may review material designated as “CONFIDENTIAL” and “CONFIDENTIAL – FOR COUNSEL ONLY,” subject to the terms of the Protective Order.

**B. Whether Dr. Payne May Review “CONFIDENTIAL” Material**

**1. Legal Standard**

As discussed above, Federal Rule 26(c)(1)(G) permits the Court to limit disclosure of confidential commercial and technical information where necessary to protect against competitive harm. In deciding whether a party’s executives may review confidential information, courts balance the party’s need for access against the risk of competitive harm. *See RPA Int’l Pty Ltd. v. Compact Int’l, Inc.*, No. 06cv1147 WQH (AJB), 2007 WL 4105725, at *2 (S.D. Cal. Nov. 16, 2007). The Court also considers the nature of the information to be disclosed and the protections provided by the proposed protective order.

**2. Analysis**

Arcturus seeks to allow three executives—Chief Executive Officer Joseph Payne, Chief Business Officer Kevin Skol, and Chief Financial Officer Dennis Mulroy—to review material designated "CONFIDENTIAL," but not material designated "CONFIDENTIAL – FOR COUNSEL ONLY." ECF No. 41 at 6–7; ECF No. 41-1 ¶¶ 8–9. In their supplemental response, the Capstan Parties state that they do not object to Mr. Skol and Mr. Mulroy receiving access to material designated "CONFIDENTIAL," so long as they sign the required undertaking. ECF No. 42 at 3. The remaining dispute therefore concerns Dr. Payne. The Capstan Parties contend that his role as Arcturus's Chief Executive Officer and his involvement in the subject matter of this litigation create an unacceptable risk of competitive harm. *Id.* at 4–5.

Dr. Payne is Arcturus's President and Chief Executive Officer and serves on its Board of Directors. ECF No. 40-7 at 3. Arcturus contends that Dr. Payne does not engage in research and development work. ECF No. 41-1 ¶ 8. The Capstan Parties dispute this, arguing that Dr. Payne is Arcturus's top competitive decisionmaker, is a named inventor on Arcturus patents involving ionizable lipids, and discusses research and development efforts on earnings calls. ECF No. 42 at 6–7.

In balancing the need for access with the risk of competitive harm, the Court finds that Dr. Payne should **not** be allowed to review information designated as "CONFIDENTIAL." Since research and development are a key aspect of Arcturus's business, Dr. Payne - as the President, Chief Executive Officer, and a Director - must by necessity have an important role in research and development, even if not a direct one. Arcturus's need for Dr. Payne to have access is lessened by the fact that Mr. Kurata, Mr. Mulroy, and Mr. Skol will be able to review information designated as "CONFIDENTIAL" on behalf of Arcturus.

//

//

//

### C. Form of the Privilege Logs

Federal Rule of Civil Procedure 26(b)(5)(A) requires a party withholding material based on a claim of privilege or work product protection to identify the claim and provide enough information for the other side to assess it without revealing the protected material itself. Courts may allow categorical privilege logs when they provide enough information to evaluate the privilege claims without requiring unnecessary document-by-document detail. *See In re Imperial Corp. of Am.*, 174 F.R.D. 475, 478–79 (S.D. Cal. 1997); *Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-cv-06637-RS (PSG), 2012 WL 5637611, at *7 (N.D. Cal. Nov. 15, 2012).

The parties agree that they should provide categorical privilege logs. Arcturus proposed that those logs include the following information for each category: a description of the category; the participants, with attorneys identified; the number of documents or communications withheld; whether the party claims attorney-client privilege, work product protection, or a different privilege; the earliest date of any document or communication withheld; and the latest date of any document withheld. ECF No. 41 at 8. The Capstan Parties do not disagree with this proposal, so the Court adopts it. ECF No. 43 at 2. The parties' privilege logs shall include that information for each category of documents or information they withhold.

The parties' disagreement is focused on Arcturus's request that the parties be required to produce metadata privilege logs in addition to categorical privilege logs. *Id.* The Court declines to require metadata or other logs at this time. Requiring metadata logs in addition to categorical logs would eliminate the efficiencies and burden reductions that categorical logs are designed to achieve. This Order is without prejudice to the parties' right to ask the Court to compel additional information on a showing that a categorical log does not contain sufficient information to "enable other parties to assess that claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

//

//

## III. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

1. Arcturus may designate Lance Kurata as "House Counsel" under the Protective Order. Mr. Kurata may review material designated as "CONFIDENTIAL" and "CONFIDENTIAL – FOR COUNSEL ONLY," subject to the terms of the Protective Order.

2. Dr. Payne may not review material designated as "CONFIDENTIAL," subject to the terms of the Protective Order.

3. Mr. Mulroy and Mr. Skol may review material designated as "CONFIDENTIAL," subject to the terms of the Protective Order.

4. The parties shall initially exchange categorical privilege logs with the information outlined in this order. After the logs are produced, either party may seek additional information regarding a particular category if necessary.

**IT IS SO ORDERED.**

Dated: September 28, 2026

Allison H. Goddard

Honorable Allison H. Goddard
United States Magistrate Judge